UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMAR DEVANTE WARREN,

                Petitioner,              Case No. 1:24-cv-1089

v.                                Honorable Paul L. Maloney

DALE BONN,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jamar Devante Warren is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. On October 17, 2022, Petitioner pleaded *nolo contendere* in the Macomb County Circuit Court to two counts of assault with a dangerous weapon, in violation of Mich. Comp. Laws § 750.82. On November 16, 2022, the trial court sentenced Petitioner to concurrent prison terms of 1 to 4 years.

On October 12, 2024, Petitioner filed his habeas corpus petition, raising the following sole ground for relief:

I.      Mr. Warren's plea was not knowing, intelligent, and voluntary and the trial court abused its discretion by denying Mr. Warren's repeated requests to withdraw his plea.

(Pet., ECF No. 1, PageID.6.) Respondent contends that Petitioner's ground for relief lacks merit. (ECF No. 10.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

On October 17, 2022, Petitioner pleaded *nolo contendere* in the Macomb County Circuit Court to two counts of assault with a dangerous weapon, in violation of Mich. Comp. Laws § 750.82. (Plea Hr'g Tr., ECF No. 11-9.) At the outset of the hearing, the prosecutor represented to the court that defense counsel would be "requesting a *Cobbs* to the bottom of the guidelines."[1] (*Id.*, PageID.199.) The prosecutor indicated that Petitioner's guidelines had been estimated "at five to 23" months. (*Id.*, PageID.199, 202.) Before placing Petitioner under oath, the trial court clarified:

> Well, this is not a *Cobbs* to out of custody, this is a *Cobbs* to the bottom third, which is the only thing I have in front of me right now. Okay And so based on what I have, and that your client is pleading and taking responsibility—which is all that I have— I would grant that request for *Cobbs*; however, if I do learn facts at sentencing, which would include any comments by the victims, or any criminal history, anything like that, if I do learn facts at sentencing that tell me that's not an appropriate sentence and I can't honor it, I would let your client withdraw his plea and set the matter for trial.

(*Id.*, PageID.204.)

After the trial court placed Petitioner under oath, Petitioner represented that he had "discussed this entire matter and this plea" with counsel, and that he was satisfied with counsel's advice and services. (*Id.*, PageID.205–206.) Petitioner understood that he was agreeing to plead no contest to two counts of assault with a dangerous weapon, and that each count was a felony "punishable up to four years in prison." (*Id.*, PageID.206.) Petitioner acknowledged that he

---

[1] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court held that a trial court judge may preliminarily indicate the appropriate length of sentence, if the defendant pleads guilty or no-contest; if the judge later determines that the sentence must exceed the preliminary evaluation, the defendant has a right to withdraw the plea. *See id.*; Mich. Ct. R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x 701, 703, n.1 (6th Cir. 2007).

understood that the trial court agreed to sentence him to the bottom of the guidelines, but that he would have the right to withdraw his pleas if facts came out at sentencing suggesting that such a sentence was not appropriate. (*Id.*, PageID.207.)

After Petitioner entered his no contest pleas (*id.*, PageID.212), the trial court asked for the factual basis. The parties stipulated to entry of the "request for warrant authorization from the police departments for each case." (*Id.*, PageID.213.) The court entered those as exhibits. (*Id.*) The trial court concluded that there was a sufficient factual basis to support the pleas, and that Petitioner had voluntarily pleaded no contest. (*Id.*, PageID.214.)

After the trial court accepted Petitioner's no contest pleas, the judge and Petitioner went back and forth regarding issues concerning Petitioner's bond. At one point, Petitioner asked if he could withdraw his plea. (*Id.*, PageID.221.) The trial court told Petitioner that he could not, but that he could "talk to [his] counsel about filing a motion." (*Id.*) Subsequently, Petitioner stated: "I was tricked into taking this plea deal, which I never would've really even taken; I was reluctant this entire time I was sitting up here talking." (*Id.*, PageID.222–223.)

The parties appeared before the trial court for Petitioner's sentencing on November 16, 2022. (Sentencing Tr., ECF No. 11-10.) Petitioner's brother, who was one of the victims, spoke to the court. (*Id.*, PageID.234–235.) After Petitioner's brother spoke, the prosecutor made the following statement:

> Judge, in addition to that, I had spoken with Mr. Warren, and the other complainants, and should this Court impose a sentence that was consistent with the *Cobbs* of, possibly, county time, or bottom third, and consider putting defendant on probation, after that I would ask the Court to consider a GPS tether for the first 90 days upon release from custody, as one of those terms, if the Court was going that route.

(*Id.*, PageID.235.)

3

Shortly after the trial court stated that Petitioner would be sentenced to 1 to 4 years for the first count, Petitioner began acting out and mentioned that the court told him that he could not revoke his plea. (*Id.*, PageID.240.) Ultimately, Petitioner was removed from the courtroom, and the judge announced a break in proceedings so that counsel could advise Petitioner of his rights. (*Id.*, PageID.242.) About two hours later, proceedings resumed, with Petitioner appearing via Zoom from the Macomb County Jail. (*Id.*, Page ID.243.) Defense counsel indicated that Petitioner did not wish to appear in person. (*Id.*) The court then reiterated the 1 to 4 years imposed for the first count, and then went on to sentence Petitioner to a concurrent 1 to 4 years for the second count. (*Id.*, PageID.246.)

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Court of Appeals, arguing that Petitioner's plea was not knowing, voluntary, and intelligent, and that the trial court abused its discretion by denying Petitioner's repeated requests to withdraw his plea. (ECF No. 11-11, PageID.254.) On May 22, 2023, the Michigan Court of Appeals denied leave for lack of merit in the grounds presented. (ECF No. 11-12, PageID.424.) The Michigan Supreme Court denied Petitioner's application for leave to appeal on October 31, 2023. (*Id.*, PageID.405.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

6

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

As noted above, Petitioner's sole ground for relief is that his plea was not knowing, intelligent, and voluntary, and that the trial court abused its discretion by denying his repeated requests to withdraw his plea. (§ 2254 Pet., ECF No. 1, PageID.6.)

As an initial matter, to the extent that Petitioner contends that the trial court abused its discretion under state law by refusing to allow him to withdraw his plea, his claim is not cognizable on federal habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Thus, to the extent that Petitioner contends that the trial court failed to abide by state law by denying him the opportunity to withdraw his plea is not cognizable on habeas review. In fact,

the Michigan Court of Appeals' conclusion that Petitioner's claim regarding plea withdraw had no merit is binding upon this Court.[2] *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, there is no parallel federal constitutional right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991). Consequently, the question of whether Petitioner should have been allowed, in the trial court's discretion, to withdraw his no contest pleas is not cognizable on federal habeas corpus review.

Petitioner also contends that his plea was not knowing, intelligent, or voluntary. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). On the other hand, "[i]t is well-settled that

---

[2] The Michigan Court of Appeals and Michigan Supreme Court issued summary orders denying Petitioner's applications for leave to appeal, and the court of appeals indicated that leave to appeal was being denied for lack of merit in the grounds presented. Those orders are deemed decisions on the merits of the claims presented that are entitled to AEDPA deference. *See Harrington*, 562 U.S. at 99; *see also Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

Under Michigan law, a no contest plea "has the same consequences as a guilty plea." *People v. Tomlinson*, 213 N.W.2d 803, 804 (Mich. Ct. App. 1973). The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution." (quoting *Alford*, 400 U.S. at 37)); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be

9

the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." (internal quotation marks omitted) (citation omitted)).

Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance

10

prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A

court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The defendant bears the burden of overcoming the presumption that the challenged action might

be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see

also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

decisions were hard to attack). The court must determine whether, in light of the circumstances as

they existed at the time of counsel's actions, "the identified acts or omissions were outside the

wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief

if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews

a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is

"doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111,

123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen*, 563 U.S. at 190; *Premo v.

Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is

"whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."

*Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (citing *Harrington*, 562 U.S. at 102)

(stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a

*Strickland* claim in the context of habeas and AEDPA . . . ").

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective

assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same

standard articulated in *Strickland* for determining whether counsel's performance fell below an

objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Not every ineffective assistance of counsel claim survives a guilty plea. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

Here, Petitioner relies upon the argument that he raised in the state appellate courts—that his plea was not knowing, intelligent, and voluntary because he believed that he would be placed on probation and released from custody. (ECF No. 1-2, PageID.26.) Petitioner also mentions that counsel was ineffective by telling him that he "was guaranteed to go home if [he] took the plea[,] which was a lie." (ECF No. 1-3, PageID.35.)

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia*, 991 F.2d at 326. A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (finding that a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Here, the State has produced both a transcript of Petitioner's guilty plea proceedings as well as the transcript of his sentencing. At the outset of the hearing, the prosecutor represented that defense counsel would be "requesting a *Cobbs* to the bottom of the guidelines," which had been estimated "at five to 23" months." (Plea Hr'g Tr., ECF No. 11-9, PageID.199, 202.) Before placing Petitioner under oath, the trial court clarified:

> **Well, this is not a *Cobbs* to out of custody, this is a *Cobbs* to the bottom third, which is the only thing I have in front of me right now.** Okay And so based on what I have, and that your client is pleading and taking responsibility—which is all that I have—I would grant that request for *Cobbs*; however, if I do learn facts at sentencing, which would include any comments by the victims, or any criminal history, anything like that, if I do learn facts at sentencing that tell me that's not an appropriate sentence and I can't honor it, I would let your client withdraw his plea and set the matter for trial.

13

(*Id.*, PageID.204 (emphasis added).) After being placed under oath, Petitioner represented that he had "discussed this entire matter and this plea" with counsel, and that he was satisfied with counsel's advice and services. (*Id.*, PageID.205–206.) Petitioner understood that he was agreeing to plead no contest to two counts of assault with a dangerous weapon, and that each count was a felony "punishable up to four years in prison." (*Id.*, PageID.206.) Petitioner acknowledged that he understood that the trial court agreed to sentence him to the bottom of the guidelines, but that he would have the right to withdraw his pleas if facts came out at sentencing suggesting that such a sentence was not appropriate. (*Id.*, PageID.207.)

Petitioner acknowledged that he had received a copy of his Advice of Rights, read that document, and discussed his rights with his attorney. (*Id.*, PageID.208.) Petitioner indicated that no one had forced him or threatened him to plead no contest. (*Id.*) Petitioner also stated that no one had made any promises, other than what had been stated on the record, to encourage him to plead no contest. (*Id.*, PageID.209.)

At one point during the plea colloquy, Petitioner mentioned that "when [he] talked to [his] grandmother, [she] told [him] if [he] actually took the deal, [he] would be out of jail and [he] wouldn't have to sit in jail." (*Id.*, PageID.211.) The trial court responded, "Okay. But you understand that your grandmother has nothing to do with my sentencing, other than I'm going to listen to her and take into consideration what she has to say. Do you understand that?" (*Id.*) Petitioner acknowledged that he did, and indicated his understanding that he could not rely on what his grandmother had said in any way. (*Id.*)

After the trial court concluded that Petitioner's no contest pleas and found that there were knowingly and intelligently made, the judge and Petitioner went back and forth regarding Petitioner's bond, during which Petitioner asked if he could withdraw his plea. (*Id.*, PageID.221.)

The trial court told Petitioner that he could not, but that he could "talk to [his] counsel about filing a motion." (*Id.*) Subsequently, Petitioner stated: "I was tricked into taking this plea deal, which I never would've really even taken; I was reluctant this entire time I was sitting up here talking." (*Id.*, PageID.222–223.)

At Petitioner's sentencing on November 16, 2022, the prosecutor made the following statement:

> Judge, in addition to that, I had spoken with Mr. Warren, and the other complainants, and should this Court impose a sentence that was consistent with the *Cobbs* of, possibly, county time, or bottom third, and consider putting defendant on probation, after that I would ask the Court to consider a GPS tether for the first 90 days upon release from custody, as one of those terms, if the Court was going that route.

(Sentencing Tr., ECF No. 11-10, PageID.235.)

Although Petitioner did state on the record near the end of plea proceedings that he had been "tricked" into taking the plea, he offers no evidence to explain how he was allegedly so tricked. In any event, Petitioner's claim that he entered his plea unknowingly and unintelligently is wholly belied by the record before the Court. First, despite Petitioner's suggestion that counsel told him that he would get out of jail if he took the plea, Petitioner has provided no evidence to support that conclusory assertion. Furthermore, as set forth above, Petitioner represented under oath that he was satisfied with counsel's advice and services, and that he had counsel had fully discussed the plea and his rights. Petitioner also stated that no one had forced him or threatened him to plead guilty, and that no one had made any promises other than those included in the plea offer.

Notably, the trial court explicitly told Petitioner that the *Cobbs* agreement would not be to an agreement to "out of custody," but was instead an agreement to be sentenced to the bottom third

15

of the guidelines. Petitioner indicated his understanding, and also indicated his understanding that each count was punishable by up to four years in prison. Although Petitioner mentioned that his grandmother had told him that he could get out of jail by taking the plea, the court told Petitioner that his grandmother's statement had no effect on sentencing. Petitioner indicated that he understood that he could not rely upon anything that his grandmother had said in any way. Thus, even if counsel had told Petitioner that he would get out of jail by taking the plea, the trial court's plea colloquy can be said to have cured any misunderstanding Petitioner may have had regarding the ramifications of his no contest pleas. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (noting that "a claim of ineffective assistance of counsel premised upon allegedly misleading information provided by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' . . . when the court conducts a proper, clear, and thorough plea colloquy" (emphasis in original)); *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (concluding that the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (concluding that the trial court's "clear and thorough plea allocution" that apprised the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*).

In light of the foregoing, Petitioner has not demonstrated that his plea was unknowingly and unintelligently entered, and he has not demonstrated that counsel rendered ineffective assistance by telling Petitioner he would be released from jail if he took the plea. Moreover, Petitioner fails to demonstrate "a reasonable probability that, but for counsel's errors, he would

16

not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. During the plea hearing, the court noted that in exchange for Petitioner's no contest pleas, the prosecution was agreeing to dismiss case numbers 2022-1470-FH, as well as count two in case number 2022-1549-FH. (Plea Hr'g Tr., ECF No. 11-9, PageID.206.) Public records reflect that in case number 2022-1470-FH, Petitioner had been charged with one count of malicious destruction of personal property worth $1,000.00 to $20,000.00, in violation of Mich. Comp. Laws § 750.377a(1)(b)(i). *See* Register of Actions, *People v. Warren*, Case No. 2022-1470-FH, https://courtpa.macombgov.org/ eservices/search.page.9?x=MvjViPIJ5iyUSKKVkUQzgg (enter "Warren" for "Last Name," enter "Jamar" for "First Name," select "Search," select the link for case number 2022-001470-FH, then select the "Charge" tab) (last visited June 4, 2025). That charge was punishable by up to five years in prison. *See* Mich. Comp. Laws § 750.377(a)(1)(B). Count two in case number 2022-1549-FH charged Petitioner with malicious destruction of property worth $200.00 to $1,000.00, in violation of Mich. Comp. Laws § 750.377a(1)(c)(i). *See* Register of Actions, *People v. Warren*, Case No. 2022-1549-FH,  https://courtpa.macombgov.org/eservices/search.page.9?x=MvjViPIJ5iyUSKKV kUQzgg (enter "Warren" for "Last Name," enter "Jamar" for "First Name," select "Search," select the link for case number 2022-001549-FH, then select the "Charge" tab) (last visited June 4, 2025). That charge was punishable by up to a year in prison. *See* Mich. Comp. Laws § 750.377a(1)(C)(i).

In light of the foregoing, it is clear that Petitioner faced well more than a maximum of four years of imprisonment had he proceeded to trial and been convicted of all charges against him. By pleading no contest to the two charges of assault with a dangerous weapon, Petitioner faced only a maximum of four years' imprisonment. Nowhere does Petitioner provide any evidence that he would have foregone the generous agreement and proceeded to trial.

In sum, Petitioner fails to demonstrate that the state courts' rejection of his claim that his plea was entered unknowingly and involuntarily is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to federal habeas corpus relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in

18

violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### <u>Conclusion</u>

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.


Dated:    <u>June 10, 2025</u>          <u>/s/ Paul L. Maloney</u>
                                         Paul L. Maloney
                                         United States District Judge

19